UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRENT BROWN,

          Plaintiff,                   Case No. 5:16-cv-12362
                                       District Judge Judith E. Levy
v.                                     Magistrate Judge Anthony P. Patti

S. RIVARD, *et al.*,

          Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 25)

**I.      RECOMMENDATION**:  The Court should grant in part and deny in part Defendants' motion for summary judgment.  Specifically, the Court should grant the motion with respect to Plaintiff's claims against Defendants Rivard, McCullick, Parsons, and Williams, and deny the motion with respect to Plaintiff's defamation claim against Defendant Barnes.

**II.     REPORT**

      **A.      Background**

           **1.      Factual Background**

                **a.  Commencement of Suit and Parties**

Plaintiff, a state inmate who is proceeding without the assistance of counsel, filed his complaint and request to proceed *in forma pauperis* on June 23, 2016. The Court granted his request on June 28, 2016. (DE 3.) He brings claims of excessive force, defamation, conspiracy, and retaliatory transfer pursuant to 42 U.S.C. § 1983 against Saint Louis Correctional Facility ("SLF") staff, specifically: S. Rivard, the Warden during the relevant time period; M. McCullick, the Deputy Warden; K. Parsons, the grievance coordinator; F. Williams, the Assistant Resident Unit Supervisor ("ARUS"); and, S. Barnes, a correctional officer. He bases his claims on the following events.

### b. Plaintiff at SLF

Plaintiff was transferred to SLF on March 20, 2014, bringing with him an admittedly "dilapidated" footlocker containing "legal property." (DE 1 at ¶ 10.) The footlocker was confiscated upon his arrival to SLF. According to Plaintiff, staff did not conduct a hearing on excess legal property. On July 10, 2015, however, hearing officer L. Maki agreed that Plaintiff had enough legal property for a replacement footlocker.

On June 17, 2014, Plaintiff had a physical altercation with his "bunkie," which Defendant Barnes discovered during his rounds. Defendant Barnes aimed his taser at the men, while instructing them to separate. Plaintiff asserts that he was unable to follow Defendant Barnes' order because his bunkmate was holding

him down, and that he attempted to make this known by repeatedly stating "he's holding me." (DE 1 at ¶ 11.)  Defendant Barnes then tased Plaintiff for "approximately 10 to 20 seconds."  (Id. at ¶ 12.)

Following the incident, Defendant Barnes issued a misconduct report, stating that he saw Plaintiff's "hands wrapped around his bunkie's neck."  (Id. at ¶ 19, internal quotations omitted).  However, Plaintiff asserts that Defendant Barnes later admitted that he could not see his hands because there was a desk in the way. Plaintiff claims that Defendant Barnes, together with Rivard and McCullick discussed Barnes' false misconduct report.  During the misconduct hearing, a video of the altercation was not shown, but the hearing officer determined that Plaintiff was on top of his bunkmate and "had to be tazed by staff."  (DE 1 at ¶ 26.)  On June 24, 2017, Plaintiff submitted a Step 1 grievance based on Barnes' allegedly false misconduct report.  The grievance was denied because it was directly related to the misconduct hearing.

On June 18, 2014, just after the tasing incident, unnamed staff packed up Plaintiff's property and confiscated several items as contraband.  On July 10, 2014, SLF staff held a hearing to determine the disposition of the confiscated property, which resulted in the property being destroyed over Plaintiff's protests.  Plaintiff grieved this issue as well.  He asserts that Defendant Parsons informed him that a hearing on this issue would be held on August 18, 2014.  The hearing was

3

postponed, however, and Plaintiff was transferred to the Alger Correctional Facility ("LMF") on August 20, 2014.

### 2.    The Instant Motion

Defendants filed the instant motion for summary judgment on January 10, 2017, asserting that they are entitled to summary judgment for three reasons.  First, they argue that Plaintiff failed to exhaust his administrative remedies against Defendants Williams, Parsons, McCullick, and Rivard because he did not mention them by name aqnd failed to grieve the issues raised in his complaint.  Second, they assert that he only alleged personal involvement of the Defendants in his excessive force claim.  Finally, Defendants argue that they are entitled to qualified immunity.

Plaintiff opposes the motion.  He argues that he properly exhausted his administrative remedies by naming in his grievances all the events and individuals involved that he was aware of at the time.  Next, he asserts that he properly alleged personal involvement of the Defendants and if a particular Defendant was not named in a specific claim, it was because that person was "not intended to be held liable" for that claim.  (DE 28 at 57.)  Finally, he counters that Defendants are not entitled to qualified immunity because they committed their actions with bad faith.

**B.      Standard**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e) (2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

5

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### C.    Discussion

#### 1.    Exhaustion of Administrative Remedies

##### a.    Exhaustion Under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of

6

§ 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .").

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  As such, Defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

### b.    Grievance Procedures at the MDOC

Pursuant to its Policy Directive dated July, 9, 2007, the administrative remedies available at the MDOC are as follows.  First, the inmate must attempt to resolve any issue with the staff member involved within two days of becoming aware of a grievable issue.  (DE 25-2, ¶ P.)  If the issues are not resolved within five days, the inmate may file a Step 1 grievance using the appropriate form.  The inmate should receive a response within fifteen days of filing his or her grievance.  If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form.  (Id. at ¶ BB.)  Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response within ten days after the response was due, he or she may file a Step III grievance.  (Id. at ¶ FF.)  Step III grievances are "logged on a computerized grievance tracking system."  (Id. at ¶ GG.)  The matter is fully exhausted after the disposition of the Step III

grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

Here, Defendants acknowledge that Plaintiff filed two grievances while housed at SLF: 1) SLF-14-07-885-07a ("885-07a") and 2) SLF-14-07-807-27a (807-27a).  They do not dispute that the grievances were pursued through Step III.  Instead, they argue that Plaintiff failed to provide their names at Step I and failed to grieve the issues raised in his complaint.  They assert that these missteps prevented them from addressing and reviewing his claims prior to his lawsuit, in contravention of the PLRA's exhaustion requirements.  Plaintiff counters that he named all relevant individuals that he was aware of at the time he filed his grievances.  A brief summary of the grievances at issue is in order.

### i.     885-07a

Plaintiff filed his Step I grievance on July 10, 2014 and described the issue as follows:

> 6/17/2014: Grievant is placed in segregation for alleged misconduct. 6/18/2014: Unit Staff Officer Bierstetel issues contraband removal record for excess personal property. 7/10/14: RUM Havelka conducts hearing and determines property is to be destroyed.  Grievant states excess pro-party is result and SLF [unreadable] is getting my footlocker upon transfer from DRF on 3/20/2014, and resultant excess legal property combining with non-legal personal property.  And that grievant needs extra storage provision (container, duffle bag) for legal property.

9

(DE 25-3 at 10 and DE 1 at 68.)  The grievance was denied by Deputy Warden

Barnett on September 17, 2014 and Plaintiff filed a Step II appeal on September

18, 2014.  (DE 25-3 at 8 and 11.) In his Step II grievance, he mentions that

Parsons' Step I response was tardy.  (DE 25-3 at 8.)  Rivard denied his Step II

grievance on October 7, 2014.  Plaintiff appealed to Step III, indicating that Rivard

and McCullick were retaliating against him and mentions Parsons' "tardy" Step I

response.  His Step III grievance was denied on August 28, 2015.

### ii.      807-27a

Plaintiff filed his Step I grievance on June 24, 2014.  He notes that Barnes

issued a misconduct report that incorrectly described seeing "Grievant's hands

around another inmate's neck."  (DE 25-3 at 19.)  Later, Plaintiff indicates that he

overheard Barnes stating that he "couldn't see" where his hands were located

because there was a desk in the way.  Id.  Plaintiff mentions that Rivard questioned

Barnes about his statement.  The grievance was denied and Plaintiff filed a Step II

appeal on July 31,  again noting that Barnes filed "an intentionally false/misleading

conduct report," and later admitted that he could not see Plaintiff's hands to Rivard

and McCullick.  (DE 25-3 at 17.)  His Step II grievance was denied and Plaintiff

appealed to Step III, which was also denied.

      **c.**    **Plaintiff Failed to Exhaust His Grievances Against Defendants Rivard, McCullick, Parsons, and Williams.**

To be sure, "exhaustion is not per se inadequate [under the PLRA] simply because an individual later sued was not named in the grievances." *Okoro v. Hemingway*, 481 F. 3d 873, 874 (6th Cir. 2007). "However, if such a requirement is written into the prison's administrative procedures, compliance is mandatory if a defendant is to be considered exhausted." *Washington v. Hutchinson*, No. 08-12787, 2009 WL 2923162, at *4 (E.D. Mich. Sept. 10, 2009). Defendant cites to current Michigan Department of Corrections ("MDOC") policy stating that the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included" at Step 1. MDOC Policy Directive 03.02.130, ¶ R, http://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf (last visited May 2, 2017); *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("Under the [Michigan] Department of Corrections' procedural rules, inmates must include the "[d]ates, times, places and names of all those involved in the issue being grieved" in their initial grievance.").

Defendants' argument is therefore partially meritorious. Plaintiff does *not* mention Defendants Rivard, McCullick, Parsons, and Williams in his Step I grievances. However, in 807-27a, Plaintiff specifically mentions Barnes as the individual who filed a false report against him, which echoes the due process claim

in his complaint.  Accordingly, Plaintiff did not fail to exhaust his administrative remedies with respect to Defendant Barnes and his due process claim because it provided the agency sufficient information to "correct its own mistakes" before being haled into federal court.  *Ngo*, 548 U.S. at 89.  I therefore recommend that Defendants' motion be granted as to Plaintiff's claims against Defendants Rivard, McCullick, Parsons, and Williams based on his failure to exhaust his administrative remedies.

As Plaintiff indicated in his response brief, he did not name Defendants in the counts in which he did not intend to hold them liable.  A review of his complaint indicates that he specifically named Barnes in his claims for excessive force (DE 1 at ¶ 50) and filing a false report (¶ 51).  His grievance against Defendant Barnes properly addresses his allegations that Defendant Barnes defamed him by filing a false report, but does not address the alleged excessive force used in the tasering incident.  As such, I recommend that Plaintiff's excessive force claim against Defendant Barnes be dismissed for failure to exhaust.  Thus, the only remaining claim in this action is Plaintiff's Due Process claim, arising out of his allegations that Defendant Barnes lied in his misconduct report.  Plaintiff also styles this claim as one for "defamation."  (*See* DE 1 at 12, ¶ 2.)[1]

---

[1] In his complaint, Plaintiff asserts that, in addition to violating his Due Process rights, Defendant Barnes' alleged false report violated Michigan state law.  As best as the Court can discern, he is referring to Michigan Penal Code § 750.411a, which

## 2.    Plaintiff Alleged Barnes' Personal Involvement.

Defendants assert that Plaintiff failed to allege their personal involvement in

the events described in his complaint.  Defendants are correct that, in analyzing a

case under § 1983, "each defendant's liability must be assessed individually based

on his [or her] own actions."  *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir.

2010).  However, as to the remaining Due Process claim  against Defendant

Barnes, Plaintiff properly pleaded personal involvement in his complaint.  Plaintiff

describes his claim as follows:

> The actions of defendant Barnes in filing a false report through
> malicious intent, denied the plaintiff due process of the laws, in
> violation of the Fourteenth Amendment to the United States
> Constitution and Article I, § 17 to the Michigan Constitution.

(DE 1 at ¶ 51.)  In his statement of facts, he indicates that Defendant Barnes issued

a misconduct report stating that he could see Plaintiff's hands wrapped around his

bunkmate's neck, but later indicated that he could not see Plaintiff's hands because

his view was obstructed by a desk.  (Id. at ¶¶ 19-20.)  Plaintiff asserts that, as a

result of Defendant Barnes' misconduct report, he was found guilty of the

---

covers false reports of crime.  However, this provision does not confer a private
right of action.  *See, e.g.*, <u>Kelly v. Rich</u>, No. 16-CV-12624, 2016 WL 5219638, at
*5 (E.D. Mich. Aug. 3, 2016), <u>report and recommendation rejected as moot
following Plaintiff's voluntary dismissal,</u> No. 16-CV-12624, 2016 WL 5118529
(E.D. Mich. Sept. 21, 2016).

misconduct charge, in violation of his due process rights. Plaintiff sufficiently pleaded Defendant Barnes' personal involvement in his allegations.

### 3. Defendant is Not Entitled to Qualified Immunity.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Phillips v. Roane Cnty.,* 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The Court conducts a two-step analysis in assessing qualified immunity. First, the Court determines whether "the violation of a constitutional right has occurred" and second, whether the "constitutional right at issue was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). During the analysis, the Court must view the facts in the light most favorable to the plaintiff. *Id.* The Sixth Circuit recently laid out the Court's analysis of qualified immunity as follows:

> To deny qualified immunity, the court need not conclude that the inferences drawn by the Plaintiff are the only reasonable inferences that could be drawn, but must simply find that the inferences drawn are reasonable and not blatantly contradicted.

*Harris v. Lasseigne*, 602 F. App'x 218, 222 (6th Cir. 2015). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the

officials are not entitled to qualified immunity." *Moldowan v. City of Warren,* 578
F.3d 351, 375 (6th Cir. 2009).

Here, Plaintiff brings his claim under the Fourteenth Amendment, asserting
that he was deprived of Due Process because Defendant Barnes lied and defamed
him on his misconduct report.  "The Fourteenth Amendment forbids state actors
from depriving individuals of life, liberty or property without due process of law."
*Quinn v. Shirey*, 293 F.3d 315, 319–20 (6th Cir. 2002).  "[A] person's reputation,
good name, honor, and integrity are among the liberty interests protected by the
due process clause of the fourteenth amendment." *Chilingirian v. Boris,* 882 F.2d
200, 205 (6th Cir.1989).  "However, defamation  alone is not enough to invoke due
process concerns," and Plaintiff must also demonstrate "[s]ome alteration of a right
or status previously recognized by state law."  *Quinn*, 293 F.3d at 320 (internal
quotations omitted).  "In other words, when a plaintiff alleges the loss,
infringement or denial of a government right or benefit previously enjoyed by him,
coupled with communications by government officials having a stigmatizing
effect, a claim for deprivation of liberty without due process of law will lie."
*Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993).

Plaintiff asserts that Defendant Barnes lied on the misconduct report, filed
on June 17, 2014, in which he states that Plaintiff "had his hands around [his
bunkmate's] neck."  (DE 1 at 52.)  The misconduct report is signed by Defendant

Barnes, but does not indicate that it was sworn under oath.  As a result of this
statement, Plaintiff alleges, he was improperly found guilty of the misconduct
charge, and required to pay restitution in the amount of $8,936.63.  (Id. at 54.)
During the misconduct hearing, Plaintiff stated that he "never had him around the
neck" and that Defendant Barnes "told the warden he could not see . . . ."  (Id.)
Again, there is no indication that Plaintiff's statements were made under oath.
Accordingly, the Court is left with Plaintiff's unsworn statement that Defendant
Barnes lied about his actions and Defendant Barnes' unsworn account of those
actions.

      Defendants argue that Barnes statements were made during the course of his
work and are therefore privileged.  As support for this proposition, they point to
*Graves v. Bowles*, 419 F. App'x 640, 645 (6th. Cir. 2011), which states that
"[s]tatements made in the course of work or for the enforcement of law" warrant a
public interest privilege.  *Id.* at 644.  However, this privilege applies to statements
that are made "as confidentially as circumstances will permit, to aid in detecting
felonies[.]"  *Id.*  Here, Defendant Barnes wrote his observations on a misconduct
report, which Plaintiff clearly received because he provided a copy of it with his
complaint.  It is unclear how Defendant Barnes is attempting to describe his
statements as privileged, or what such a privilege would do in the face of

Plaintiff's claim.  As Defendants note later, Barnes' statement in the misconduct report was simply him "report[ing] what he observed."  (DE 25 at 25.)

In the absence of sworn evidence indicating that Defendant Barnes did not lie on his misconduct report, I conclude that Plaintiff survives the first step of the qualified immunity analysis: specifically, the inferences drawn by Plaintiff are reasonable and not blatantly contradicted such that a reasonable jury could conclude that a Constitutional violation occurred.  Defendant Barnes does not dispute that he made a false statement, Plaintiff's reputation is a liberty interest protected by the Due Process clause, and Plaintiff has also demonstrated an alteration of a right or status, namely that he was found guilty of the misconduct report and fined.

As to the second prong of the analysis, no one disputes that the right to due process was clearly established at the time of Defendant Barnes' actions, much less that a prisoner has a liberty interest in his good reputation or a right to be free from false accusations by prison officials.

Finally, to the extent Defendants argue that Barnes' actions were objectively reasonable, such an argument is unavailing.  Specifically, Defendant Barnes' actions in recounting his observations of Plaintiff's skirmish with his bunkmate *may* have been reasonable.  However, he has provided no evidence to demonstrate that Plaintiff's allegations that he *lied about those events* are false.  It is not

17

objectively reasonable for an officer to lie when making a report.  *See, e.g., Mejia v. City of Silverton*, No. CIV. 03-461-TC, 2004 WL 183927, at *3 (D. Or. Aug. 16, 2004) *report and recommendation adopted* 2004 WL 2203272 (D. Or. Sept. 29, 2004) ("If plaintiff's version of the facts turns out to be true, defendant Rice will not be entitled to qualified immunity as no reasonable officer could believe filing a false report is lawful."); *Bassett v. City of Burbank*, No. 14CV01348, 2014 WL 12573410, at *5 (C.D. Cal. Nov. 5, 2014) (Concluding that "no reasonable officer would think [authoring false reports] is acceptable . . . .").  Accordingly, I recommend that Defendants' motion be denied as to Plaintiff's claim of defamation in violation of the Fourteenth Amendment against Defendant Barnes .

### D.    Conclusion

In sum, I recommend that Defendants' motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**.  Specifically, Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Rivard, McCullick, Parsons, and Williams, because he did not mention them in his Step I grievances.  Additionally, Plaintiff failed to exhaust his administrative remedies with respect to his excessive force claim against Defendant Barnes because he did not describe that event in his grievances.  Finally, Defendant Barnes is not entitled to judgment as a matter of law on Plaintiff's defamation claim.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

19

Dated: May 24, 2017                    s/Anthony P. Patti
                                       Anthony P. Patti
                                       UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of this document was sent to parties of record on May 24, 2017, electronically and/or by U.S. Mail.

                                       s/Michael Williams
                                       Case Manager for the
                                       Honorable Anthony P. Patti