# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Trent Brown,

                Plaintiff,      Case No. 16-cv-12362

v.                         Judith E. Levy
                                United States District Judge

S. Rivard, M. McCullick, K.
Parsons, F. Williams, and S.      Mag. Judge Anthony P. Patti
Barnes,

                Defendants.

_____/

## OPINION AND ORDER ADOPTING THE REPORT & RECOMMENDATION [33], DENYING DEFENDANTS' OBJECTIONS [34], DENYING PLAINTIFF'S OBJECTIONS [38], AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [25]

Plaintiff, proceeding *pro se*, filed his complaint on June 23, 2016. (*See* Dkt. 1.) On January 10, 2017, defendants filed a motion for summary judgment, which was fully briefed by March 31, 2017. The Magistrate Judge filed his Report and Recommendation on May 24, 2017, recommending that the motion be granted as to defendants Rivard, McCullick, Parsons, and Williams, but denied in part as to the defamation claim against defendant Barnes. For the reasons set forth

below, the parties' objections are denied, the Report and Recommendation is adopted in full, and defendants' motion for summary judgment is granted in part and denied in part.

## I. Background

The Court adopts the factual background set forth in the Report and Recommendation, except as otherwise noted. (Dkt. 33 at 1-4.)

By way of summary, plaintiff, an inmate, brings excessive force, defamation, conspiracy, and retaliatory transfer claims under 42 U.S.C. § 1983. He alleges that a footlocker containing legal property was confiscated without a hearing upon his arrival at Saint Louis Correctional Facility on March 20, 2014. (On July 10, 2015, he was granted a replacement footlocker.)

On June 17, 2014, plaintiff was having an altercation in his cell with his bunkmate, resulting in plaintiff being tasered by defendant Barnes. According to plaintiff, defendant Barnes falsified the misconduct report, stating that plaintiff had his "hands wrapped around his bunkie's neck," even though Barnes later admitted that he could not see plaintiff's hands because there was a desk in the way. At the misconduct hearing, no video of the altercation was shown, but the

hearing officer determined that plaintiff "had to be tazed [*sic*] by staff."

And on June 18, 2014, plaintiff alleges that staff from the correctional

facility confiscated certain of plaintiff's property (purportedly

contraband), which was destroyed over his protests. Plaintiff was

transferred to the Alger Correction Facility on August 20, 2014.

Plaintiff filed grievances regarding the allegedly falsified

misconduct report by defendant Barnes and for the destruction of his

property. The misconduct report grievance was denied on procedural

grounds (as related to a misconduct hearing), which was affirmed

through the three-step grievance procedure.

The Magistrate Judge recommends that the claims against

defendants Williams, Parsons, McCullick, and Rivard be dismissed

because plaintiff failed to exhaust the claims through the prison's

administrative procedures, but that the defamation claim against

defendant Barnes was both fully exhausted and properly pleaded, and

should thus be allowed to proceed. (Dkt. 33 at 11-17.) Defendant

objects to the Report and Recommendation, arguing that the due

process defamation claim against defendant Barnes was not properly

exhausted, because the claim pertained to the misconduct process for

which plaintiff was required under Michigan Department of Corrections ("MDOC") policy to seek rehearing, not file a grievance. (Dkt. 34 at 2-5.) Defendant also objects that the Magistrate Judge erred in recommending that plaintiff's due process defamation claim against defendant Barnes is sufficiently pleaded. (*Id.* at 5-7.)

Plaintiff also filed objections, eleven in total. (*See* Dkt. 38.) Most of plaintiff's objections are based on what plaintiff believes are mischaracterizations of the facts, and each will be addressed with specificity below. In his ninth objection, plaintiff argues that the Magistrate Judge misconstrues the MDOC grievance process. (*Id.* at 15-17.)

## II. Legal Standard

District courts review *de novo* those portions of a report and recommendation to which a specific objection has been made. 28 U.S.C. § 636(b)(1)(C). "*De novo* review in these circumstances entails at least a review of the evidence that faced the magistrate judge; the Court may not act solely on the basis of a report and recommendation." *Spooner v. Jackson*, 321 F. Supp. 2d 867, 869 (E.D. Mich. 2004). But objections to the Report and Recommendation must not be overly general, such as

objections that dispute the correctness of the Report and Recommendation but fail to specify findings believed to be in error. *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006); *see also Howard v. Sec'y of HHS*, 932 F.2d 505, 509 (6th Cir. 1991). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

### III. Analysis

#### a. Defendants' objections

##### i. Objection No. 1

In defendants' Objection No. 1, they argue that the Magistrate Judge erred by finding that the due process defamation claim pleaded against defendant Barnes was properly exhausted. (Dkt. 34 at 2-5.) After defendant Barnes tasered plaintiff, defendant Barnes allegedly filed an incident report in which he states plaintiff had his hands around his bunkmate's neck, but defendant Barnes later revealed that he could not actually see plaintiff's hands. As noted by the Magistrate Judge, neither plaintiff nor defendant Barnes gave sworn testimony regarding the allegation, because the Step I grievance was denied as a non-grievable issue related to a misconduct ticket. That procedural decision was upheld at Steps II and III.

Defendants' objection misconstrues plaintiff's claim and the Magistrate Judge's recommendation. Plaintiff's due process defamation claim does not take issue with the misconduct decision itself, which, as defendants argue, could only be administratively exhausted by requesting a rehearing. Rather, plaintiff's claim is that defendant

6

Barnes defamed him and deprived him of due process by falsifying the misconduct report, resulting in a fine of nearly $9000.

Under Michigan law, "[a] prisoner aggrieved by a final decision or order of a hearings officer shall file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." MICH. COMP. LAWS § 791.255. And defendants argue that under MDOC policy, any "issues pertaining to the misconduct process are not grievable." (Dkt. 34 at 2.) But per the terms of the cited policy, non-grievable issues include "*[d]ecisions* made in hearings" and "*[d]ecisions* made in minor misconduct hearings." (Dkt. 25-2 at 2-3.)

The policy is not so broad that all "issues pertaining to the misconduct process are not grievable," as defendants argue. Rather, plaintiffs cannot grieve the *decisions* of *hearing officers* made in misconduct hearings. Defendants cite *Siggers v. Campbell* to support their argument, but that case is not helpful. Plaintiff does not seek to have the misconduct decision overturned. He seeks damages from defendant Barnes for defaming him in an allegedly falsified misconduct report, which is collateral to the misconduct decision itself. *See, e.g.*,

*Anthony v. Ranger*, No. 11-2199, 2012 U.S. App. LEXIS 27031, at *4-5

(6th Cir. June 19, 2012) (claim relating to defendant's decision to "file a

misconduct report rather than a decision made by a hearing officer"

must be exhausted through administrative grievance procedure)[1] (citing

---

[1] The Sixth Circuit affirmed the district court's dismissal of the claim as unexhausted, which in turn had adopted the Magistrate Judge's recommendation that the claim be dismissed for failure to exhaust. To add clarity, the relevant part of that Report and Recommendation is as follows:

> Plaintiff argues that because a major misconduct report starts the disciplinary hearing process and is the document upon which the hearing officer bases his decision, a grievance against a prison official based on a misconduct report is akin to a grievance of the hearing officer's decision on the misconduct itself. . . .
>
> Plaintiff has not shown that his retaliation claim against [d]efendant . . . was non-grievable. The fact that the MDOC rejected [his grievance] for raising non-grievable issues when it was filed against a hearing officer and hearing investigator has no bearing on whether [p]laintiff could have grieved his retaliation claim against [d]efendant Williams. The affidavit of Richard Stapleton states that a prisoner may file a grievance against an MDOC staff person for retaliation, including an allegedly retaliatory major misconduct ticket, as long as the prisoner grievance indicates that it is for the alleged retaliation and is not attacking a guilty finding on the ticket itself. Defendant Williams' decision to issue major misconduct tickets to [p]laintiff . . . was not a "decision[] made in hearings conducted by hearing officers." Therefore, Policy Directive 03.02.130(F)(1) does not preclude [p]laintiff from filing grievances against [d]efendant Williams for issuing retaliatory major misconduct reports. Plaintiff's argument that it would have been futile to file a grievance does not excuse him from exhausting his administrative remedies as required under 42 U.S.C. § 1997e(a).

*Anthony v. Ranger*, No. 08-CV-11436, 2011 U.S. Dist. LEXIS 97129, at *7-9 (E.D. Mich. May 9, 2011) (citations to the docket omitted). MDOC would like to have it both ways: to have these claims dismissed when grieved, because they are non-

*Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011)); *Green v. Messer*,

No. 12-12319, 2013 U.S. Dist. LEXIS 129327, at *4-5 (E.D. Mich. Sep.

11, 2013) (plaintiff required to exhaust claim related to issuance of

misconduct report because issue was grievable); *Green v. Lennox*, No.

12-14003, 2013 U.S. Dist. LEXIS 132761, at *8-9 (E.D. Mich. Aug. 28,

2013) (retaliatory misconduct claim must be exhausted through

administrative grievance process). For these reasons and those set out

in the Magistrate Judge's Report and Recommendation, defendants'

Objection No. 1 is denied.

### ii.  Objection 2

In defendants' Objection No. 2, they argue that the Magistrate

Judge erred by finding that plaintiff established a due process

defamation claim against defendant Barnes. (Dkt. 34 at 5-7.)  The

Magistrate Judge held that plaintiff established the claim by alleging

that defendant Barnes "lied and defamed him on his misconduct

report," and that as a result he was "improperly found guilty of the

misconduct charge, and required to pay restitution in the amount of

$8,936.63."  As the Magistrate Judge noted, "a prisoner has a liberty

grievable, and dismissed when ungrieved, for failure to exhaust them through the
grievance process. MDOC cannot.

9

interest in his good reputation" and a "right to be free from false accusations by public officials." (Dkt. 33 at 14-18.)

Defendants argue that even if plaintiff has a liberty interest in being free from defamation by a public official, the claim must be dismissed because plaintiff "failed to demonstrate how the sanction that flowed from Barnes' alleged misstatement on the misconduct report inevitably affected the duration of [plaintiff]'s sentence or imposed an atypical and significant hardship on [him]." (Dkt. 34 at 8-9 (quoting *Ellington v. Karkkila*, No. 2:16-CV-230, 2017 WL 1531879, at *5 (W.D. Mich. Apr. 28, 2017).) Rather, defendants imply, the nearly $9000 fine is insufficient to meet the atypical and significant hardship standard as set forth in *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Although the Sixth Circuit has previously held that "a $4.00 fine do[es] not constitute an atypical and significant hardship in the context of prison life," see *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005), the same cannot be said for a disciplinary fine of nearly $9000. To be sure, a monetary fine will generally not implicate an inmate's due process rights. *See Wheeler v. Hannigan*, 37 F. App'x 370, 372 (10th Cir. 2002) ("[N]either placement in disciplinary segregation, nor the

10

extraction of a monetary fine, generally implicate[s] an inmate's due process rights."). But the fine in this case is so atypical that the Court could not find any cases in which a plaintiff challenged prison disciplinary sanctions anywhere near that amount. *See, e.g.*, *Gard v. Kaemingk*, No. 4:13-CV-04062-LLP, 2015 U.S. Dist. LEXIS 131424, at *37-38 (D.S.D. Jan. 30, 2015) ($99 fine imposed within prison disciplinary system not atypical); *Green v. Howard*, No. 3:13-cv-0020, 2013 U.S. Dist. LEXIS 4406, at *19 (M.D. Tenn. Jan. 10, 2013) ($4 fine does not "exceed[] the basic discomforts indicative of the 'ordinary incidents of prison life.'") (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Henderson v. Virginia*, Civil Action No. 7:07-cv-00266, 2008 U.S. Dist. LEXIS 5230, at *33-34 (W.D. Va. Jan. 23, 2008) ($12 fine does not constitute atypical and significant hardship).

For these reasons and those set forth in the Magistrate Judge's Report and Recommendation, defendants' Objection No. 2 is denied.

## b. Plaintiff's objections

### i. Objection No. 1

Plaintiff's first objection to the Report and Recommendation challenges the Magistrate Judge's characterization that "[a]ccording to

[p]laintiff, staff did not conduct a hearing on excess legal property."
(*See* Dkt. 33 at 2.) Because plaintiff's objection has no bearing on
whether the claim was exhausted, the objection is denied.

### ii. Objection No. 2

Plaintiff's second objection to the Report and Recommendation
challenges the Magistrate Judge's characterization that "[d]uring the
misconduct hearing, a video of the altercation was not shown, but the
hearing officer determined that [p]laintiff was on top of his bunkmate
and 'had to be tazed by staff.'" (*See* Dkt. 33 at 3.) Because plaintiff's
objection has no bearing on whether the claim was exhausted, the
objection is denied.

### iii. Objection No. 3

Plaintiff's third objection to the Report and Recommendation
challenges the Magistrate Judge's characterization that "[o]n June 18,
2014, just after the tasing incident, unnamed staff packed up
[p]laintiff's property and confiscated several items as contraband." (*See*
Dkt. 33 at 3.) Because plaintiff's objection has no bearing on whether
the claim was exhausted, the objection is denied.

### iv. Objection No. 4

Plaintiff's fourth objection to the Report and Recommendation challenges the Magistrate Judge's characterization that plaintiff "asserts that [d]efendant Parsons informed him that a hearing on this issue would be held on August 18, 2014. The hearing was postponed, however, and [p]laintiff was transferred to the Alger Correctional Facility ("LMF") on August 20, 2014." (*See* Dkt. 33 at 3-4.) Because plaintiff's objection has no bearing on whether the claim was exhausted, the objection is denied.

### v. Objection No. 5

Plaintiff's fifth objection to the Report and Recommendation challenges the Magistrate Judge's "partial quoting" (Dkt 38 at 9), when the Magistrate Judge writes that "if a particular Defendant was not named in a specific claim, it was because that person was 'not intended to be held liable' for that claim." (*See* Dkt. 33 at 4 (quoting Dkt. 28 at 57).) Because plaintiff's objection has no bearing on whether the claim was exhausted, the objection is denied.

### vi. Objection No. 6

Plaintiff's sixth objection to the Report and Recommendation "expressly contends through clarification" that when the Magistrate Judge writes "[g]rievant states excess pro-party is result and SLF [unreadable] is getting my footlocker," it should read "[g]rievant states excess property is result of SLF confiscating my footlocker." (*See* Dkt. 38 at 11.) Because plaintiff's objection has no bearing on whether the claim was exhausted, the objection is denied.

### vii. Objection No. 7

Plaintiff's seventh objection to the Report and Recommendation challenges the Magistrate Judge's characterization that "[i]n his Step II grievance, [plaintiff] mentions that Parsons' Step I response was tardy." (*See* Dkt. 33 at 10.) Because plaintiff's objection has no bearing on whether the claim was exhausted, the objection is denied.

### viii. Objection No. 8

Plaintiff's eighth objection to the Report and Recommendation challenges the Magistrate Judge's characterization:

> Later, [p]laintiff indicates that he overheard Barnes stating that he "couldn't see" where his hands were located because there was a desk in the way. Plaintiff mentions that Rivard questioned Barnes about his statement. The grievance was denied and [p]laintiff filed a Step II appeal on July 31, again

noting that Barnes filed "an intentionally false/misleading conduct report," and later admitted that he could not see [p]laintiff's hands to Rivard and McCullick. His Step II grievance was denied and Plaintiff appealed to Step III, which was also denied.

(*See* Dkt. 33 at 10 (citations omitted).) Because plaintiff's objection has no bearing on whether the claim was exhausted, the objection is denied.

### ix. Objection No. 9

Plaintiff's ninth objection to the Report and Recommendation challenges the Magistrate Judge's finding that plaintiff failed to exhaust his claims by failing to specifically name defendants Rivard, McCullick, Parsons, and Williams.

According to plaintiff, because the Magistrate Judge quoted the policy and added the words "at Step I," the Magistrate Judge erred as a matter of law. (Dkt. 38 at 16.) Plaintiff is incorrect. The Magistrate Judge did not err in quoting the MDOC policy in this a manner. The policy requires plaintiff "to file a Step I grievance," and "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130, ¶ R, *available at* http://www.michigan.gov/documents/corrections/03_02_130_200872_7.p df. The Magistrate Judge thus correctly described the policy.

Plaintiff similarly argues that the Magistrate Judge erred by stating "inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." (Dkt. 33 at 11 (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)). In fact, the Magistrate Judge quoted directly from a Sixth Circuit case, which binds this Court. The Magistrate Judge did not err by quoting a recent and binding case on point. Plaintiff's objection is thus denied.

### x. Objection No. 10

Plaintiff's ninth objection to the Report and Recommendation challenges the Magistrate Judge's finding that "[p]laintiff does *not* mention [d]efendants Rivard, McCullick, Parsons, and Williams in his Step I grievances." (Dkt. 33 at 11.) Plaintiff cites one of his Step I grievances, in which plaintiff had written:

> Shortly following the . . . exchange, Warden B. Rivard . . . questioned officer Barnes about statement in question. Said officer against admitted he couldn't see. And when asked why he stated that he saw grievant's hands around another inmate's neck, officer Barnes replied, "the sergeant told me to!"

(*See* Dkt. 25-3 at 19.)

Plaintiff is technically correct that defendant Rivard was "mentioned" in the Step I grievance. But, as noted in the case cited by plaintiff, the purpose of the exhaustion requirement of the Prison Litigation Reform Act of 1995 "is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected[,] and to create an administrative record for those disputes that eventually ended up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).

In this particular grievance, plaintiff sought an "[i]investigat[ion] and reprimand [of] c/o Barnes and Sgt. Sevenson." (Dkt. 25-3 at 19.) The only defendant in this case against whom a claim was exhausted through Step III was thus defendant Barnes. Plaintiff must first take his specific claim against defendant Rivard through the grievance procedure. Because he did not, plaintiff's objection is denied.

### xi. Objection No. 11

Plaintiff's eleventh objection to the Report and Recommendation challenges the Magistrate Judge's finding that plaintiff's "grievance against [d]efendant Barnes properly addresses his allegations that [d]efendant Barnes defamed him by filing a false report, but does not

17

address the alleged excessive force used in the tasering incident." (Dkt. 38 at 16.)

Plaintiff first argues that because he is not a physician or attorney, he did not "fully realize[]" the "magnitude of [d]efendant Barnes' tasing . . . before [plaintiff's] Step I grievance submission." (Dkt. 38 at 24.) He also argues that a video showed what defendant Barnes did, and in any case, defendants waived the issue of non-exhaustion due to lack of specificity when they did not raise the issue during the administrative process. (*Id.* at 24-25.) But defendants could not have known to make such a defense during the administrative process because plaintiff did not specify that he wished to bring an excessive force claim. (*Id.* at 25.) These arguments do not excuse the requirement that plaintiff raise and exhaust his excessive force claim before proceeding on such a claim here.

Finally, plaintiff argues that this Court should not dismiss his Eighth Amendment excessive force claim before reviewing the video footage of the incident, as "requested in [p]laintiff's comprehensive complaint." (*Id.* at 25.) Plaintiff misunderstands that the exhaustion requirement precludes the Court from doing so until he proceeds with

his claim through the prison grievance procedure. For these reasons, plaintiff's objection is denied.

## IV.    Conclusion

For the reasons set forth above, defendants' objections (Dkt. 34) are DENIED, plaintiff's objections (Dkt. 38) are DENIED, the Report and Recommendation (Dkt. 33) is ADOPTED, and defendants' motion for summary judgment (Dkt. 25) is GRANTED IN PART AND DENIED IN PART.

Plaintiff's claims against defendants Rivard, McCullick, Parsons, and Williams are dismissed for failure to exhaust. Plaintiff's excessive force claim against defendant Barnes is dismissed for failure to describe that event in his grievances, and thus failure to exhaust the claim. Plaintiff's due process defamation claim against defendant Barnes may proceed. The case is referred back to the Magistrate Judge for all pretrial proceedings.

IT IS SO ORDERED.

Dated: August 9, 2017              s/Judith E. Levy
Ann Arbor, Michigan                JUDITH E. LEVY
                                   United States District Judge

19

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 9, 2017.


s/Shawna Burns
Shawna Burns
Case Manager